Filed 10/23/13  In re Jacob R. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JACOB R. et al., Persons Coming Under the Juvenile Court Law. | B246605<br>(Los Angeles County<br>Super. Ct. No. CK91894) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>AMY O.,<br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Veronica McBeth, Judge.  Dismissed by opinion.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

No appearance for Minors.

* * * * * *

Appellant Amy O. (Mother) appeals from the juvenile court's jurisdiction order sustaining a dependency petition pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] and a disposition order declaring the children Jacob R. and Chloe R. dependents of the court and removing them from Mother's custody. Pursuant to *In re Sade C.* (1996) 13 Cal.4th 952, 994, and *In re Phoenix H.* (2009) 47 Cal.4th 835, 846, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

*Detention.*

In December 2011, when the children Jacob and Chloe were five and two years old, respectively, the Los Angeles County Department of Children and Family Services (Department) received a referral from Mother that the children's father, Louie R. (Father), had hit Jacob on the mouth, causing a swollen lip. She further reported that she shared joint custody of the children with Father, she and Father had a history of domestic violence and Jacob had reported other violent incidents involving Father. A social worker met with Mother in person, who "frantically" described her concerns about her children's safety as well as her own history of anxiety, depression and drug use. She agreed to submit to drug testing.

The social worker interviewed Father, who confirmed he had joint custody of the children with Mother, but denied any violence toward Jacob. He claimed that he lived with his family and that someone would have noticed if he had hit Jacob. He admitted to domestic violence in his relationship with Mother and discussed his own criminal history and drug use. He asserted that Mother was mentally unstable. The social worker was unable to speak with the children initially, but Jacob later stated that he liked Father's house but at his Mother's house Mother was always arguing with her boyfriend Brian C. Jacob also stated he remembered "'daddy hitting mommy and mommy crying'" when he lived with both Mother and Father.

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

In January 2012, the paternal grandmother expressed concerns to the Department about both parents, opining there was "something mentally wrong" with Mother and stating she had witnessed arguments between Mother and Father in front of the children. Also in January 2012, the social worker made an unannounced visit to Mother's house, which appeared cluttered and disorganized. Though Mother had agreed to drug testing, she failed to appear for tests scheduled in January and February 2012. The social worker made an unannounced visit to Father's house as well and observed that the room where Chloe was sleeping was dirty and had a foul odor. Father became agitated during a discussion of his drug use; he agreed to a drug test which came back positive for methamphetamine and marijuana.

During another discussion with the social worker in mid-February 2012, Mother described her long history of methamphetamine use, as well as her history of anxiety, depression and trauma from both childhood abuse and domestic violence with Father.

On the basis of the social worker's assessment of Mother's and Father's drug use, history of domestic violence and continued hostility toward each other, the Department placed the children in protective custody. On February 16, 2012, the Department filed a dependency petition pursuant to section 300, subdivisions (a) and (b). In paragraph a-1, the petition alleged that Mother and Father had a history of engaging in violent altercations in front of Jacob and that Father had a criminal record as a result of engaging in domestic violence. Paragraphs b-1 through b-4 alleged that Father had a history of substance abuse, Mother had a history of substance abuse, Mother and Father had a history of violence and Mother had a history of mental and emotional problems. The petition further alleged that Mother's and Father's behavior rendered them incapable of providing regular care and placed the children at risk of physical harm and damage.

At the detention hearing the same day, the juvenile court found a prima facie case for detaining the children and permitted the Department to place them with the paternal grandmother. The juvenile court also ordered Mother and Father to stay at least

3

100 yards away from each other.  Mother and Father received monitored visitation and were directed to randomly drug test each week and to attend parenting classes.

### *Jurisdiction.*

The Department interviewed Mother, Father, Jacob and others for the March 2012 jurisdiction/disposition report.  Mother said Jacob had observed violent incidents between Father and her, and added that the last violent incident had occurred in 2010.  She met Father when they were both using methamphetamine, and they kept their drug paraphernalia in the garage after Jacob was born.  Father continued to verbally abuse Mother and she remained fearful of him at present.  Father admitted to limited incidents of domestic violence, but denied hitting Jacob.  He further admitted to methamphetamine and marijuana use up to the present.  Jacob reported that Father was always mean to Mother and had hit her and caused her to bleed.  But he admitted he lied when he said Father had hit him.

In addition, Mother's therapist reported that Mother had been working in a bank approximately two years earlier and suffered from trauma when a robbery occurred on the job.  Mother reiterated that she has suffered from anxiety and depression—some as the result of her fear of Father—and was currently taking prescribed medication.  Both the paternal and maternal grandmothers confirmed Mother's and Father's domestic violence.  The paternal grandmother was also aware of Father's drug use, though she had never observed Mother or Father use drugs, and thought he would benefit from a residential drug treatment program.  Mother desired to regain custody of her children, but missed another drug test in March 2012.  She ultimately tested negative for drugs in mid-March 2012.

On the date set for the jurisdiction/disposition hearing, Mother requested the issuance of a temporary restraining order against Father, and the juvenile court granted her request.  In April 2012, Mother and Father stipulated to extend the temporary restraining order.  At the May 29, 2012 jurisdiction/disposition hearing, Mother and Father submitted on a modified petition and waived their right to a contested hearing.

4

After admitting the Department's reports into evidence, the juvenile court dismissed counts a-1, b-2 and b-4, and sustained counts b-1 and b-3 as modified to address Father's unresolved history of drug abuse and Mother's and Father's history of violent altercations.

For the July 2012 disposition hearing, Mother's psychiatrist reported that Mother had not come in for a session since April 2012 and that her prescriptions had run out in May 2012 and not been refilled. Father's therapist reported Father had appeared for multiple sessions, and was cooperative and motivated. Mother had six negative drug tests between May and July 2012. Father, likewise, had several negative drug tests between March and July 2012, and was doing well in drug counseling. The Department reported that Mother was not in regular therapeutic care.

The Department requested a continuance of the July 13, 2012 disposition hearing because counsel was unavailable. Mother requested that the children be placed with her or, at a minimum, that her visitation be liberalized. The juvenile court denied her requests, but ordered the Department to address those issues at the continued hearing.

In an August 3, 2012 supplemental report, the Department indicated that Mother still had not resumed individual therapeutic treatment though she had sessions with Jacob's therapist. Mother stated she could no longer afford individual treatment. She had attended several parenting classes and had begun a drug treatment program. The Department further reported that Jacob disclosed Mother's boyfriend Brian was at the home during at least half of his visits, and the maternal grandmother (approved to monitor visits) sometimes left him alone with Mother and Brian. He added that Mother and Brian fought a lot; he liked to watch their arguments and watch them make up. Mother denied Jacob's account of the relationship. The Department opined that Mother's progress was inadequate to recommend either release of the children or unmonitored visitation.

Also on August 3, 2012, Mother filed an application for the reissuance of the temporary restraining order. At the August 3, 2012 hearing, the juvenile court cautioned

5

Mother that Brian was not to be around the children. She indicated "he has seen the kids maybe twice for 15 minutes." The disposition hearing was again continued because one of Mother's witnesses could not be present.

In a September 13, 2012 supplemental report, the Department received information that Father's progress in drug counseling was excellent and he had two successful unmonitored visits with the children. Mother's counseling attendance, however, was inconsistent; she failed to appear for three drug tests in July and August 2012; and she submitted a "cold" urine test. She also had not brought Brian in for a live scan, even though she represented she would do so.

### *Supplemental Petition and Disposition.*

On September 17, 2012, the Department filed a supplemental petition pursuant to section 342, alleging one count under section 300, subdivision (b), that Mother's failure to regularly participate in court-ordered random drug testing and her submission of a cold and tampered urine test endangered the children's physical health and safety and placed them at risk of harm. The Department's detention report expressed concern about Mother's unresolved drug issues, noting that she failed to appear for testing 10 times since January 2012. A friend of the maternal grandmother's and a maternal aunt submitted letters on Mother's behalf indicating that the children's visitation had been appropriately monitored. Jacob's therapist reported to the Department that he had stopped seeing Mother due to her emotional responses when problematic concerns arose. Mother denied the allegations. Pending the next hearing, the juvenile court ordered Mother to drug test weekly and directed that Brian not be present during visits.

In a December 10, 2012 supplemental report, Mother's new therapist indicated Mother's progress was slow. She opined there was still some risk of Mother turning to illegal drugs to address the depression she tended to feel as a result of her inadequate coping skills. Mother had resumed taking prescription medication, though she missed appointments with her psychiatrist in October and November 2012. She completed a parenting program. The report also indicated Jacob told Father that Brian came to drop

6

off a gift at a birthday party hosted by Mother. The social worker opined that Jacob was not being entirely truthful and had possibly been coached, given that he later said Brian stayed for one hour.

At a December 10, 2012 hearing for adjudication on the supplemental petition and disposition on the original petition, the juvenile court dismissed the supplemental petition. It thereafter proceeded to disposition, which it entered in accordance with case plans signed by Mother and Father. Mother objected only to the condition that visits be in a neutral setting and not monitored by the maternal grandmother. The juvenile court overruled the objection in light of evidence that Mother had not been complying with the existing visitation order, though it did give the Department discretion to liberalize visitation. The juvenile court declared the children dependents of the court and ordered they remain placed with the paternal grandmother. It ordered that Mother participate in a drug and alcohol program with after care, participate in a 12-step program and begin conjoint therapy with Jacob when appropriate. She was also ordered to participate in a domestic violence program for victims, begin individual therapy and take her prescribed medication. Father was directed to complete his programs and was permitted unmonitored daytime visitation.

Mother appealed. On May 6, 2013, pursuant to *In re Phoenix H., supra,* 47 Cal.4th at page 843, Mother's appointed counsel filed an Appellant's Opening Brief setting forth the applicable facts and law, and informing this court both that she found no arguable issues to be pursued on appeal and she sent a copy of the record and brief to Mother. We permitted Mother the opportunity to file a supplemental brief, which she has done. Her brief is in the form of a letter in which she recites many of the statements in the Department's reports and at the hearings, and explains why they are false. She also asserts that she anticipated she would go to trial at some point.

## DISCUSSION

"An appealed-from judgment or order is presumed correct. [Citation.] Hence, the appellant must make a challenge. In so doing, he must raise claims of reversible error or

other defect [citation], and 'present argument and authority on each point made' [citations]. If he does not, he may, in the court's discretion, be deemed to have abandoned his appeal. [Citation.] In that event, it may order dismissal. [Citation.]" (*In re Sade C., supra,* 13 Cal.4th at p. 994.)

Mother has failed to establish any error in the proceedings below or any legal basis for reversal. Both the jurisdictional and dispositional findings are reviewed under the substantial evidence standard. (*In re E.B.* (2010) 184 Cal.App.4th 568, 574.) Under this standard, we determine whether there is any substantial evidence, contradicted or uncontradicted, which supports the juvenile court's conclusion. (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.) "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

Here, substantial evidence in the form of Mother's, Father's and Jacob's statements to the Department supported the juvenile court's jurisdiction and disposition findings. Mother essentially contends that the juvenile court erred by not believing other statements made by her, Jacob and the maternal grandmother to the contrary, and that it should have drawn inferences from the evidence favorable to her position. But "[i]t is the [juvenile] court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence. We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence. [Citations.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53.)

Because Mother has not provided any reasoned argument or authority showing that any of the juvenile court's rulings, as to matters properly within the scope of this appeal, constitute reversible error, we deem her appeal as having been implicitly abandoned.

8

**DISPOSITION**

The appeal filed December 31, 2012 is dismissed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

         FERNS

We concur:


_____, Acting P. J.

   ASHMANN-GERST


_____, J.

   CHAVEZ

---

\*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.